NOT FOR PUBLICATION                        [Dkt. No. 20]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

LLUMIR PENA,

          Plaintiff,

     v.

DIVISION OF CHILD & FAMILY
SERVICES, et al.,

         Defendants.

Civil No. 08-1168(RMB/AMD)

**OPINION**

**BUMB,** UNITED STATES DISTRICT JUDGE:

    This matter comes before the Court upon a motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), by defendants Division of Child and Family Services ("DCFS") and several named DCFS employees (collectively the "Defendants") whom the plaintiff, Llumir Pena (the "Plaintiff"), alleges discriminated against her when she was employed at DCFS. Plaintiff asserts discrimination and intentional infliction of emotional distress claims against Defendants pursuant to Title VII of the Civil Rights Act, the New Jersey Law Against Discrimination ("NJLAD"), 42 U.S.C. § 1983, and state common law. Defendants contend that Plaintiff's claims are time-barred and that Defendants are immune from suit pursuant to the Eleventh Amendment. For the following reasons, Defendants' motion for summary judgment will be granted.

# I. BACKGROUND

## A. Facts

Defendants' motion included a "statement which sets forth material facts as to which [Defendants contend] there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion." <u>See</u> Local Civ. R. 56.1 (a).  In contrast, Plaintiff has not submitted "a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement . . . ."  <u>Id.</u>  Rather, Plaintiff submitted a three paragraph declaration containing only conclusory allegations including, that Defendants "subject[ed her] to a constructive discharge"; that she was "repeatedly harassed and retaliated against by the defendants; and that Defendants' "excuses are 'pretextual,'" (Decl. of Pl. ¶¶ 2, 3 [Dkt. No. 25 at 15 - 16]) Plaintiff's self-serving and conclusory allegations, however, are insufficient to resist summary judgment.  <u>See</u> <u>Williams v. Borough of West Chester</u>, 891 F.2d 458, 460 (3d Cir. 1989).

Consequently, because Defendants' material facts have "not [been] disputed[, they] shall be deemed undisputed for purposes of the summary judgment motion."  <u>Id.</u>  <u>See also</u>, Lite, N.J. Federal Practice Rules, Comment 2.d. to Local Civ. R. 56.1 (gathering cases).  Although Defendants' facts are deemed undisputed, they are still viewed in a light most favorable to the Plaintiff as the non-

moving party.  See Meyer v. Riegel Products Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983)

Plaintiff began working at DCFS in 1990 in the intake unit, where she worked for 16 years until her separation from DCFS on April 25, 2006.  (Defs.' Stmt of Facts ¶ 2-3.)  In September 2003, several of her co-workers began "joking" about Plaintiff's accent. (Pena Dep. 106:20-107:25; 119:4-120:4, Jan. 12, 2010 [Def.'s Ex. B])  Plaintiff stated that these individuals remarked that they could not understand her accent or portions of her reports. (Id. at 107:12-25.) These remarks included, "I don't understand you," "What do you mean", and "I'm having trouble understanding you." (Id. at 120:1-121:10.)  Plaintiff complains that in 2005, a supervisor "harassed and humiliated" her by requiring Plaintiff to do home assessments even though she lacked basic computer skills. (Pena Dep. 15:19-18:23, Jan. 28, 2010.)

In late 2005, DCFS employee Carol Carvale told her that she was "getting too old" and in early February 2006, Defendant McCoy told Plaintiff that her work sounded "too Latino." (Defs.' Stmt of Facts ¶ 32, 35.)  Plaintiff discussed these comments with her supervisors and managers, but they allegedly never took corrective action. (Id. ¶¶ 17, 24, 26, and 27.)  Plaintiff never filed an internal complaint regarding her co-worker's comments, or her supervisors' failure to act on her complaints.  (Id. ¶ 19.)

Finally, Plaintiff alleges that she applied for a new position with DCFS, Supervising Family Service Specialist II, but was unfairly denied the position on account of her age and race. (Pena Dep. 57:10-18, Jan. 28, 2010 [Def.'s Ex. C]) Plaintiff believes that she was the most qualified applicant for the position. (Id.) Plaintiff left her job at DCFS on April 25, 2006. (Pena Dep. 65:1-6; 68:18-24, Jan. 12, 2010 [Def.'s Ex. B])

**B. Procedural Posture**

Plaintiff entered a charge of discrimination with the Equal Opportunity Employment Commission ("EEOC") on January 26, 2007, 277 days after Plaintiff left her position at DCFS. (Charge of Discrimination [Def.'s Ex. D]) The EEOC sent Plaintiff a Dismissal and Notice of Right to Sue letter on December 4, 2007. (Dismissal and Notice of Rights [Def.'s Ex. E])

Plaintiff filed a Complaint in this Court on March 5, 2008. In the Complaint, Plaintiff asserted the following claims:

Count I: Discrimination, Retaliation and Hostile Work Environment claims under Title VII of the Civil Rights Act;

Count II: Discrimination under the New Jersey Law Against Discrimination;

Count III: Malicious Acts;

Counts IV and V: Constitutional Violations Pursuant to 42 U.S.C. § 1983; and

Count VI: Intentional Infliction of Emotional Distress.

4

(See Compl. ¶¶ 36-51.) Plaintiff seeks a declaratory judgment that Defendants' acts and policies violated Plaintiff's rights, damages for past and future loss of income, damages for emotional distress and attorneys' fees. (See Compl., Prayer for Relief.)

Defendants move for summary judgment arguing that Plaintiff's Title VII claims are time-barred, that the Eleventh Amendment precludes Plaintiff's § 1983 and NJLAD claims, and that Plaintiff's intentional infliction of emotional distress claim is barred by the notice-of-claim requirements of the New Jersey Tort Claims Act. Plaintiff failed to provide a substantive response. Rather Plaintiff's "letter brief" is merely a disjointed collection of points of law that lacks organization and context.

**II. STANDARD OF REVIEW**

Summary judgment should be granted if "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A fact is "material" if it will "affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). An issue is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." Id. at 250.

When deciding the existence of a genuine issue of material fact, a court's role is not to weigh the evidence: all reasonable "inferences, doubts, and issues of credibility should be resolved

against the moving party." <u>Meyer</u>, 720 F.2d at 307 n.2. However, "a mere scintilla of evidence," without more, will not give rise to a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 249. In the face of such evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the nonmoving party . . . ." <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-587 (1986). "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a 'fair-minded' jury could 'reasonably' decide.'" <u>Williams v. Borough of West Chester</u>, 891 F.2d 458, 460 (3d Cir. 1989) (<u>quoting</u> <u>Anderson</u>, 477 U.S. at 265).

**III. DISCUSSION**

As noted, in her Complaint Plaintiff asserts claims against Defendants pursuant to Title VII, the New Jersey Law Against Discrimination, § 1983, and state common law. Defendants now move for summary judgment on each of these claims.

### A. Plaintiff's Title VII Claims

Defendant DCFS and the named employee Defendants move for summary judgment on Plaintiff's claims under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C.A. § 2000e et seq. (LEXIS 2010). Defendants contend that Plaintiff did not file a charge of discrimination with the EEOC within 180 days of the alleged discrimination, as required by law. (Def.'s Br. at 1.) Plaintiff appears to respond that a claim of a hostile work

6

environment is a continuing violation that continues until the last day of employment, but does not specifically address the statutory prerequisite that a Title VII claim be filed first with the EEOC and within 180 days of the alleged discrimination. (Pl.'s Opp'n at 5.)

To become eligible to bring a Title VII claim in federal court, a plaintiff must file a charge of discrimination with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred . . . ." 42 U.S.C. § 2000e-5(e)(1) (LEXIS 2010).[1] The purpose of this filing requirement is to give prompt notice to the employer of the pending litigation and the alleged wrongful conduct. AMTRAK v. Morgan, 536 U.S. 101, 115 (2002) (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385 (1982)). This 180 day period begins when an employee receives notice of the alleged unlawful practice. Smith v. Amerada Hess Corporation, No. 05-560, 2005 U.S. Dist. LEXIS 25822, *9 (D.N.J. Oct. 31, 2005) (citing Delaware State College v. Ricks, 449 U.S. 250, 257 (1980)). Accordingly, for Plaintiff to establish a cognizable Title VII claim here, a discriminatory act must have occurred within the 180 days preceding her January 26, 2007, EEOC complaint, i.e., on or after July 30, 2006.

---

[1]     Plaintiff's age discrimination claims are actionable under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., rather than Title VII.  The requirements of Section 2000e-5(e)(1), however, apply to ADEA claims as well as Title VII claims.  Pub. L. No. 111-2, § 6, 123 Stat. 7.

The final discrete, discriminatory act which Plaintiff alleges here occurred in early March 2006, when Plaintiff's application to become a family service specialist II under the regular list was denied, even though she claims she was the most qualified applicant. (Pena Dep. 57:10-18, Jan. 28, 2010 [Def.'s Ex. C]) If true, Plaintiff's allegation that Defendant DCFS failed to promote her because of her minority status or age would constitute a discrete act and therefore establish a cognizable discrimination claim under 42 U.S.C. § 2000e.

Plaintiff brought this claim on January 26, 2007. Even when applying the principle that the statutory period begins only when a harmed employee receives notice of the wrongful act, the record shows that Plaintiff received notice of the alleged discriminatory act promptly after the list was released on March 8, 2006, 324 days before her EEOC complaint.[2] Lacking evidence of any further discrete, discriminatory acts after early March 2006, the Court finds that Plaintiff did not satisfy the filing requirements for a discrimination or retaliation claim under 42 U.S.C. § 2000e.

Plaintiff's claim that a hostile work environment is a continuing violation does not rescue her untimely EEOC complaint. Plaintiff's employment with DCFS ended on April 26, 2006, 277 days

---

[2]

 Plaintiff stated in her deposition, "The list came out, I believe it was, March 2006. March 8, 2006. . . . And I was wondering why I'm not on the regular list." (Pena Dep. 57:10-16, Jan. 28, 2010 [Def.'s Ex. C])

8

before she filed her EEOC complaint.   A hostile work environment claim may permit a plaintiff to pursue a claim for conduct that occurred prior to the start of the applicable statute of limitations if she can demonstrate a pattern of allegedly wrongful conduct by the defendant both "without and within" the limitations period.  McAleese v. Brennan, 483 F.3d 206, 218 (3d Cir. 2007) (citing West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995)).  Even assuming Plaintiff has sufficient evidence for a jury to conclude that DCFS had created a hostile work environment, such an unlawful employment practice would have ended with Plaintiff's employment and, thus, be wholly outside the 180 day limitations period.

For the foregoing reasons, Defendants' motion for summary judgment on Plaintiff's Title VII claim will be granted.

**B. Plaintiff's NJLAD and § 1983 Claims**

Defendants also move for summary judgment on Plaintiff's claims under the NJLAD and 42 U.S.C. § 1983. Defendants contend that they are immune from these claims pursuant to the Eleventh Amendment. Plaintiff offers no discernable opposition.

The Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. 11. Essentially, a state cannot

9

be sued in federal court unless the state has expressly waived its immunity or Congress has abrogated it. <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 66 (1989).

Neither the New Jersey legislature nor DCFS has explicitly waived sovereign immunity for claims brought pursuant to the NJLAD. <u>Bennett v. Atlantic City</u>, 288 F. Supp. 2d 675, 683 (D.N.J. 2003) (<u>citing</u> <u>Rudolph v. Adamar of N.J., Inc.</u>, 153 F. Supp. 2d 528, 540-44 (D.N.J. 2001)). Additionally, Congress has not abrogated--and New Jersey has not waived--the state's sovereign immunity with respect to § 1983 claims. <u>Quern v. Jordan</u>, 440 U.S. 332, 338 (1979); <u>Mierzwa v. United States</u>, 282 Fed. Appx. 973, 976 (3d Cir. 2008) (<u>citing</u> <u>Ritchie v. Cahall</u>, 386 F. Supp. 1207, 1209-10 (D.N.J. 1974)). In certain circumstances, sovereign immunity may extend to cover state agencies and state employees, and the Court next considers whether Defendants here were covered by sovereign immunity as well.

### 1. NJLAD and § 1983 Claims Against DCFS

The Eleventh Amendment immunizes state agencies from suit in federal court--regardless of the type of relief sought-when the state is the real party in interest. <u>Pennhurst State School and Hopsital v. Halderman</u>, 465 U.S. 89, 100 (1984); <u>Fitchik v. N.J. Transit Rail Operations, Inc.</u>, 873 F.2d 655, 658 (3d Cir. 1989). As a matter of law, the state is the real party in interest here as DCFS is a state "alter ego" for purposes of suit in federal court.

<u>Simmerman v. Corino</u>, 804 F. Supp. 644, 650 (D.N.J. 1992); <u>see also</u>, <u>Caesar v. Megamillion Biggame Lottery</u>, No. 05-2986, 2005 U.S. Dist. LEXIS 27822, *4 n.3 (D.N.J. Nov. 9, 2005).   Plaintiff offers no argument to the contrary.   Therefore, because the state is the real party in interest,   sovereign immunity protects DCFS from liability arising out of a suit against it in federal court.

Because New Jersey's sovereign immunity has not been waived with respect to claims brought pursuant to the NJLAD and § 1983, and because New Jersey is the party in interest in a suit against DCFS, Defendant DCFS is entitled to summary judgment on Plaintiff's NJLAD and § 1983 claims.

### 2. NJLAD and § 1983 Claims Against the Individual Defendants

Sovereign immunity may also extend to state officials acting in their official capacities.  <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 (1985).[3] When a plaintiff sues state officials in their official capacities, he stands to recover from the state treasury, so the state is the real party in interest; whereas, when he sues state officials in their individual capacities, he stands to recover from the individual defendant's personal assets.  <u>Moore v. Cuttre</u>, No. 09-2284, 2010 U.S. Dist. LEXIS 62390, *6 (D.N.J. June

---

[3] Additionally, a state officer sued in her official capacity for damages is not a "person" within the meaning of § 1983. <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 64 (1989). Therefore, if Plaintiff has sued the individual Defendants in their official capacities, those Defendants cannot be held liable for the alleged § 1983 violation.

23, 2010) (<u>citing</u> <u>Melo v. Hafer</u>, 912 F.2d 628, 635 (3d Cir. 1990), <u>aff'd</u>, 502 U.S. 21 (1991)).  Sovereign immunity extends to cover individual officials sued in their official capacities because "a judgment against a public servant 'in his official capacity' imposes liability" on the state, which sovereign immunity was meant to prevent in the first place. <u>Graham</u>, 473 U.S. at 169 (<u>quoting</u> <u>Brandon v. Holt</u>, 469 U.S. 464, 471 (1985)).

<u>Melo</u> instructs that courts are to look to the "course of proceedings" to determine whether a plaintiff is suing state officials in their official or individual capacities when the plaintiff has not explicitly stated this in the Complaint. <u>Melo</u>, 912 F.2d at 635 (<u>citing</u> <u>Graham</u>, 473 U.S. at 167 n.14).  A court will consider whether the plaintiff has sued the state itself or just the individual actors; whether the plaintiff seeks punitive damages, which cannot be recovered from individuals in their official capacities; and whether the defendants raise the issue of qualified immunity, which is only available to officials sued in their individual capacities. <u>Moore</u>, 2010 U.S. Dist. LEXIS 62390 at *6-7 (<u>citing</u> <u>Melo</u>, 912 F.2d at 636).

Here, the Court, without help from the Plaintiff is left guessing.  Plaintiff does not explicitly state in her Complaint whether she is suing the individual Defendants in their official or individual capacities. However, applying the factors outlined in <u>Melo</u>, the court can infer that Plaintiff seeks to recover from the

12

named Defendants only in their official capacities. First, in the caption of her Complaint, Plaintiff lists the official title of each of the named Defendants, and repeats the title in the body of the Complaint alongside each individual's name. (Compl. ¶¶ 1, 10-17.) This indicates that Plaintiff intended to sue the individual Defendants for their conduct in their official capacities as supervisors and managers in DCFS.   Further, Plaintiff has not argued that the individual Defendants are named in their individual capacities, even in response to Defendants' Eleventh Amendment argument, a fact this Court also considers dispositive.   At this late juncture, Plaintiff's silence estops her from arguing otherwise.   This Court is aware of no evidence to suggest that Plaintiff has named the individual Defendants in their personal capacities, and concludes that Plaintiff is suing the individual Defendants solely in their official capacities. Therefore, under the <u>Melo</u> factors, Plaintiff seeks to recover from the state itself--as well as the individual Defendants--by naming DCFS as a party. (<u>See</u> Compl. ¶ 9.)   Because a recovery for the conduct of the individual Defendants in their official capacities would come out of the state treasury, the individual Defendants are entitled to sovereign immunity.

Accordingly, the individual Defendants are entitled to summary judgment on Plaintiff's NJLAD and § 1983 claims.

## C. Plaintiff's Intentional Infliction of Emotional Distress Claim

Defendants also move for summary judgment on Plaintiff's intentional infliction of emotional distress ("IIED") claim. Defendants contend that this claim should be dismissed because Plaintiff failed to file a Notice of Claim as required by the New Jersey Tort Claims Act. N.J. Stat. Ann. § 59-3.

The New Jersey Tort Claims Act ("NJTCA") requires a plaintiff bringing a claim against a public entity or public employee to give the relevant public entity notice of the claim within ninety days of the accrual of the cause of action. N.J.S.A. §§ 59:8-3, 8-3. A plaintiff is "forever barred" from recovering on the claim if she fails to comply with these filing requirements. N.J.S.A. § 59:8-8. The purpose of the notice-of-claim requirement is to give the relevant agency an "opportunity to investigate the claims, and take disciplinary or other appropriate action to rectify inappropriate behavior or flawed practices. . . ." <u>Mawhinney v. Francesco</u>, No. 08-cv-3317, 2010 U.S. Dist. LEXIS 62439, *29 (D.N.J. June 22, 2010) (<u>quoting</u> <u>Velez v. City of Jersey City</u>, 180 N.J. 284, 293, 850 A.2d 1238 (2004)). For the notice-of-claim requirements to apply, there must be "some nexus between the wrong that is complained of and the defendant's public employment." <u>Mawhinney</u>, 2010 U.S. Dist. LEXIS 62439 at *18, *22 (<u>citing</u> <u>Gazzillo v. S. Hunterdon Reg. Bd. of Educ.</u>, 398 N.J. Super. 259, 941 A.2d 641 (N.J. App. Div. 2008)).

14

Plaintiffs must comply with the NJTCA's filing requirements in both non-intentional and intentional tort actions, but only for intentional tort claims that have accrued after June 29, 2004. Velez, 180 N.J. at 292-93, 850 A.2d 1238 (citing Bonitsis v. N.J. Inst. Of Tech., 363 N.J. Super. 505, 519-521, 833 A.2d 679 (App. Div. 2003) (rev'd on other grounds, 180 N.J. 450, 852 A.2d 188 (2004))). Courts have explicitly noted that the NJTCA's notice-of-claim requirements apply to IIED claims. Thomasian v. N.J. Inst. Of Tech., No. 08-2218, 2009 U.S. Dist. LEXIS 7900, *6 (D.N.J. Feb. 3, 2009) (citing Bonitsis, 363 N.J. Super. at 522, 833 A.2d 679). For IIED claims not subject to the NJTCA's filing requirements, New Jersey's standard two-year statute of limitations for tort actions applies. Agcaoili v. Thayer, No. 2630, 2010 U.S. App. LEXIS 3015, *6-7 (3d Cir. Feb. 16, 2010) (citing N.J. Stat. 2A:14-2; Roa v. Roa, 402 N.J. Super. 529, 955 A.2d 930 (App. Div. 2008)).

## 1. The IIED Claim Against DCFS

A public entity cannot be liable for a public employee's acts constituting actual malice or willful misconduct because that conduct would fall outside the scope of his public employment. N.J.S.A. § 59: 2-10. A public entity is defined as any "public authority, public agency, and any other political subdivision or public body in the State." N.J.S.A. § 1-3. Given that conduct that constitutes intentional infliction of emotional distress necessarily involves malice or willful misconduct, a public entity

15

cannot be held liable for an IIED claim against a public employee. Soto v. City of Newark, 72 F. Supp. 2d 489, 497 (D.N.J. 1999).[4]

Under the definition in N.J.S.A. § 1-3, DCFS clearly qualifies as a public entity.[5] As noted above, as a matter of law, a public entity cannot be held liable for employees' conduct that establishes an IIED claim. Therefore, Defendant DCFS is entitled to summary judgment on Plaintiff's IIED claim.

### 2. The IIED Claim Against the Individual Defendants

Regarding Plaintiff's IIED claim against the named individual Defendants, Plaintiff never filed a Notice of Claim. (Ramos Dep. 2:4, Jan. 20, 2010 [Def.'s Ex. I]) Additionally, there is a strong link between the alleged discriminatory acts by the individual Defendants and their public employment. Plaintiff has averred that these Defendants gave Plaintiff extra work, criticized her reports, and denied her a promotion out of discriminatory animus. (See Compl. ¶¶ 28, 32, 34.) In light of this firm nexus between the Defendants' alleged discriminatory conduct and their public employment, and the fact that Plaintiff failed to file a Notice of

---

[4] In Count III of her Complaint, Plaintiff asserts a "malicious acts" claim against Defendants. (Compl. ¶¶ 43-44 [Def.'s Ex. A]) While "malicious acts" do not constitute an independent cause of action in New Jersey, the issue of malice is relevant to Defendants' potential immunity--under the NJTCA--to Plaintiff's IIED claim. Therefore, the Court will consider Plaintiff's averments regarding Defendants' alleged malicious acts in its discussion of Plaintiff's IIED claim.

[5] Plaintiff herself has referred to DCFS as a "governmental entity of the State of New Jersey." (See Compl. ¶ 9.)

Claim within ninety days for the alleged wrongful conduct, the NJTCA's time bar applies. Pursuant to the New Jersey Supreme Court's holding in <u>Velez</u>, therefore, Defendants' conduct after June 29, 2004, cannot be considered for the purposes of determining whether Plaintiff can establish an IIED claim. All IIED claims arising from the alleged conduct of the individual Defendants before that date is subject to New Jersey's two-year statute of limitations for tort actions. Because Plaintiff did not bring an IIED claim within two years of the wrongful conduct that allegedly took place before June 29, 2004, her IIED claims arising from Defendants' acts before June 29, 2004, must be dismissed as well.

Even if Plaintiff had complied with these requirements, Plaintiff's averments are insufficient to raise a material question of fact relevant to the issue of whether Defendants' conduct constituted intentional infliction of emotional distress. In order to establish an IIED claim, a plaintiff must demonstrate that the defendant acted intentionally or recklessly, the conduct was so "outrageous in character and extreme in degree to go beyond all possible pounds of decency and to be regarded as atrocious," and that the distress was so severe that no reasonable person could endure it. <u>Buckley v. Trenton Sav. Fund. Soc.</u>, 111 N.J. 355, 366, 544 A.2d 857 (1988). In the employment context, it is "extremely rare to find conduct . . . which will rise to the level of outrageousness necessary to provide a basis for [IIED] recovery."

Id. at 366. Even racial discrimination in the workplace may not establish an IIED claim. <u>Kee v. Camden County</u>, No. 04-0842, 2006 U.S. Dist. LEXIS 73608, *22 (D.N.J. Sept. 28, 2006) (<u>quoting</u> <u>Nichols v. Acme Markets, Inc.</u>, 712 F. Supp. 488, 495 (E.D. Pa. 1989)).

In her Complaint, Plaintiff alleges that several colleagues made comments about her Hispanic accent in 2003. (Pena Dep. 106:25-107:23; 119:4-120:4, Jan. 12, 2010 [Def.'s Ex. B]) Plaintiff maintains that these individuals remarked that they could not understand her accent and had trouble reading her reports. (<u>Id.</u> at 106-07.) These remarks included, "I don't understand you," "What do you mean?", and "I'm having trouble understanding you." (<u>Id.</u> at 120-121.) Plaintiff also alleges that in 2005, a supervisor "harassed and humiliated" her by requiring Plaintiff to do home assessments even though she lacked basic computer training. (Pena Dep. 17:18-18:14, Jan. 28, 2010 [Def.'s Ex. C]) Finally, Plaintiff alleges that a colleague told her that she was getting old, and that another mentioned that her work was "too Latino." (<u>Id.</u> at 22:16-22; 30:2-5.)

These comments do not rise to the level of "outrageous" and "atrocious," as required by <u>Buckley</u>.  Because Plaintiff cannot demonstrate that Defendants' conduct would be considered "outrageous" or "atrocious," the individual Defendants are entitled

to summary judgment on the IIED claim regardless of the NJTCA's time bar.

Because Plaintiff failed to adhere to the NJTCA's notice-of-claim requirements and the statute of limitations for prior IIED claims, the individual Defendants will be granted summary judgment on Plaintiff's claim for intentional infliction of emotional distress.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment will be granted.  An appropriate order will issue this date.

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

Dated: October 8, 2010